UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARTHUR AYO-AGHIMIEN II,<br><br>　　　　*Plaintiff*,<br><br>　　v.<br><br>ATTORNEY GENERAL OF THE UNITED STATES, *et al.*,<br><br>　　　　*Defendants*. | No. 24-cv-1341 (DLF) |

## MEMORANDUM OPINION

Arthur Ayo-Aghimien brings this action against the Attorney General of the United States and the Secretary of Homeland Security under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§ 791 *et seq*. Compl., Dkt. 1. He alleges the defendants discriminated against him and caused the withdrawal of his appointment as an Immigration Judge on the basis of his race, national origin, religion, gender, and disability status. Before the Court is the defendants' Motion to Dismiss, Dkt. 22. For the reasons that follow, the Court will grant the defendants' motion.

### I.   BACKGROUND

Ayo-Aghimien is a licensed attorney and a black, Christian male born in Nigeria. Compl. ¶¶ 11, 21. From April 2001 to September 2016, Ayo-Aghimien served with the U.S. Air Force JAG Corps. *Id.* ¶ 21. He suffered from PTSD resulting from his service. *Id.* ¶ 12. In November 2007, Ayo-Aghimien began employment as an attorney with Immigration and Customs Enforcement ("ICE"), an agency of the Department of Homeland Security ("DHS"). *Id.* ¶ 23. He was deployed to Iraq in May 2008, and upon his return, he was transferred to ICE's Office of Field

Counsel in Las Vegas, Nevada. *Id.* ¶ 24. Ayo-Aghimien's immediate supervisor in the Las Vegas office was Deputy Field Counsel Mary-Jean Lambert. *Id.* ¶ 25. Ayo-Aghimien alleges that Lambert conveyed to him "negative comments from other ICE officials" regarding his May 2008 deployment. *Id.* In November 2009, he was again deployed outside of the United States in support of military operations, during which he suffered injuries requiring extensive treatment and rehabilitation. *Id.* ¶ 26.

Upon Ayo-Aghimien's return to ICE in September 2012, Lambert allegedly made "derogatory comments" regarding his deployment. *Id.* ¶ 27. Specifically, she asserted that he had "left the office with more workload" which "pissed off her attorneys"; that she "did not care to hire 'military types'"; and that the Los Angeles Deputy Chief Counsel "had apologized for 'dumping'" him with the Las Vegas office. *Id.* She also denied him an office—despite there being unoccupied offices available—and required him to work in the library. *Id.* ¶ 28. When he requested use of one of the unoccupied offices, which were purportedly being used to store Lambert's personal property, Lambert accused him of "trying to start trouble." *Id.* ¶ 29. Ayo-Aghimien further alleges that Lambert made "derogatory remarks in [Ayo-Aghimien's] presence regarding persons of [his] race (black)," and "derogatory comments about Muslims in his presence," making it clear that "she thought, because of his national origin, race, color and accent, that [he] was a follower of Islam." *Id.* ¶ 30. The complaint alleges one specific comment: "Can you tell your people to stop blowing up my country?" *Id.* Additionally, Lambert allegedly "falsely criticized" him in his annual performance appraisals. *Id.*

On November 5, 2015, Ayo-Aghimien sent an email complaint to the ICE Office of Chief Counsel accusing Lambert of subjecting him to a hostile work environment. *Id.* ¶ 31. In January of 2016, Ayo-Aghimien transferred to his current role at the Transportation Security Agency,

2

another agency within DHS, purportedly "[b]ecause of" Lambert's discrimination and retaliation against him.  *Id.* ¶¶ 31–32.

On August 30, 2016, Ayo-Aghimien received an offer of employment as an Immigration Judge with the Executive Office of Immigration Review ("EOIR"), an agency of the Department of Justice ("DOJ").  *Id.*  ¶ 32.  Ayo-Aghimien alleges that at all times relevant to this dispute, he met or exceeded the qualifications necessary to serve as an Immigration Judge.  *Id.* ¶ 41.  He further asserts that although he suffered from PTSD, he could perform the essential functions of an Immigration Judge and did in fact perform those functions during his temporary appointment.  *Id.* ¶¶ 40–41.  After he received the offer, on September 12, 2016, Lambert conducted an "oral" interview, which "lasted about ten minutes," with an EOIR staff member.  DHS EEOC Exhibits at 5, Dkt 23-2.  In that interview, she allegedly provided "false and derogatory information" to EOIR—specifically, "question[ing]" Ayo-Aghimien's "loyalty to the United States based on his ethnicity and national origin, and her assumption he was Muslim."  Compl. ¶ 34.  She also allegedly disclosed his "medical information and his physical and mental disabilities," and "commented negatively regarding [his] travel outside the United States, implying that he was involved in activities which were disloyal and illegal."  *Id.*  EOIR purportedly withdrew Ayo-Aghimien's appointment as "a direct and proximate result" of Lambert's interview, without independent investigation and without allowing him to respond.  *Id.* ¶ 35.

Ayo-Aghimien filed a formal EEOC charge against DOJ on July 1, 2017.  *Id.* ¶ 18.  The EEOC entered a judgment in DOJ's favor, which became a Final Action on December 23, 2019.  *See* DOJ EEOC Exhibits at 1–3, Dkt. 23-1.  DOJ provided notice and advised Ayo-Aghimien of his right to sue via an email sent to both Ayo-Aghimien and his then-attorney.  *Id.*

3

Ayo-Aghimien filed a formal EEOC charge against DHS on March 5, 2018. DHS EEOC Exhibits at 2. The charge alleged that Lambert had "provided inaccurate and derogatory information about him in connection with [his] temporary appointment as an Immigration Judge," in retaliation and based on his race, color, religion, sex, national origin, age, and disability status. *Id.* at 2. Ayo-Aghimien obtained a right to sue on August 14, 2023. *See* Compl. ¶¶ 14–17.

On November 11, 2023, Ayo-Aghimien filed the instant action in the District Court for the Southern District of Florida, against the Attorney General and the Secretary of Homeland Security in their official capacities.[1] *See* Compl. The Florida court granted the plaintiff's unopposed motion to change venue, Dkt. 14, and transferred this action to the undersigned, Dkt. 18. The complaint alleges seven counts: (I) race discrimination under Title VII; (II) national origin discrimination under Title VII; (III) religious discrimination under Title VII; (IV) gender discrimination under Title VII; (V) retaliation under Title VII; (VI) disability discrimination under the Rehabilitation Act; and (VII) hostile work environment under Title VII. *Id.* The defendants now move to dismiss.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] The Court will refer to the Attorney General in his official capacity as "DOJ," and the Secretary of Homeland Security in his official capacity as "DHS."

4

(2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," *Iqbal*, 556 U.S. at 678, but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility," *id.* (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited, *id.*; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

5

## III.   ANALYSIS

The defendants move to dismiss the complaint on various grounds. DOJ argues that the plaintiff's complaint is untimely because he failed to file his action within 90 days of receiving notice of DOJ's final agency action. DHS argues that the plaintiff failed to administratively exhaust certain claims and that he fails to state a claim as to others. The Court will consider these arguments in turn.

### A.   Claims Against DOJ

A federal employee bringing claims under Title VII or the Rehabilitation Act must exhaust administrative remedies before filing suit in federal district court. *See Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 33–35 (D.C. Cir. 2014); *Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015). An employee does so by filing his claims with the Equal Employment Opportunity Commission. *See generally* 42 U.S.C. § 2000e-5; 29 U.S.C. § 794a(a)(1); *see also Barkley*, 766 F.3d at 34. Upon receiving notice of a final agency action adjudicating his claims, a plaintiff has 90 days to file suit in federal court. *See Dougherty v. Barry*, 869 F.2d 605, 609 (D.C. Cir. 1989); 29 C.F.R. § 1614.407(a). "Courts apply this limit strictly and 'will dismiss a suit for missing the deadline by even one day.'" *Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007) (quoting *Wiley v. Johnson*, 436 F. Supp. 2d 91, 96 (D.D.C. 2006)).

DOJ issued a notice of "Final Action" on December 23, 2019. *See* DOJ EEOC Exhibits at 1–3. The notice warned Ayo-Aghimien that he must "file a civil action in the appropriate United States District Court within 90 days," *id.* at 3, in order to maintain a suit, *see Jackson-Pringle v. Wash. Metro. Area Transit Auth.*, No. 20-cv-1880 (JDB), 2022 WL 2982107, at *5 (D.D.C. July 28, 2022) (a notice of a final agency action must warn a plaintiff of his right to sue and the filing deadline to do so). DOJ emailed the Final Action notice to the plaintiff at the address

6

"arthur.ayo@gmail.com," and to his then-counsel at the address "askoikhetbrod@tullylegal.com." DOJ EEOC Exhibits at 1.  Ayo-Aghimien did not file the instant suit until November 11, 2023—nearly four years after the filing deadline.

Ayo-Aghimien contests the 90-day filing deadline because he asserts that his counsel never received the email of DOJ's Final Action.  Opp'n at 3, Dkt. 29; *see* Shoikhetbrod Affidavit at 2–3, Dkt. 29-1 (attesting that DOJ misspelled the counsel's email address when sending the Final Notice).  But Ayo-Aghimien offers no basis to find that he himself did not receive the notice email, which was addressed to him directly.  "It is well-settled that the 90–day limitations period begins running when the agency delivers notice to the plaintiff or to the plaintiff's attorney, whichever comes first."  *Harris v. Bodman*, 538 F. Supp. 2d 78, 80 (D.D.C. 2008), *aff'd* 2008 WL 5532102 (D.C. Cir. Aug. 27, 2008).  Courts in this district routinely reject the argument that notice is only effective when received by counsel.  *E.g.*, *Brisbon v. Tischner*, No. 20-cv-3183 (RBW), 2022 WL 1521782, at *5 (D.D.C. May 13, 2022) ("[T]he Court concludes that notice in this case was effective when either the plaintiff or her counsel, whichever came first, received the [agency] decision." (citations and quotations omitted)); *McKay v. England*, No. 01-cv-2535 (JR), 2003 WL 1799247, at *2 (D.D.C. Mar. 27, 2003).  This Court will do the same.  Because Ayo-Aghimien failed to timely file his federal action against DOJ, his claims against DOJ will be dismissed with prejudice.

    **B.**    **Claims Against DHS**

        1.    *Exhaustion*

As explained, both Title VII and the Rehabilitation Act impose administrative exhaustion requirements.  The exhaustion requirement limits the scope of an employee's complaint in federal court "to claims that are like or reasonably related to the allegations of the [EEOC] charge and

7

growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (cleaned up). A claim is "reasonably related" to an EEOC charge if "[a]t a minimum," the claim would "arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526–27 (D.C. Cir. 2019) (citation and quotations omitted). Generally, a Title VII plaintiff "'must timely exhaust administrative remedies for each discrete act alleged,' even if the acts are related." *Mount v. Johnson*, 36 F. Supp. 3d 74, 83–84 (D.D.C. 2014) (alterations and emphasis omitted) (quoting *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C.2013)). Administrative regulations further provide that an aggrieved person must "initiate contact with a [EEOC] Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). The 45-day period begins to run when an employee has "reasonable suspicion" of a discriminatory action. *Adesalu v. Copps*, 606 F. Supp. 2d 97, 102 (D.D.C. 2009).

The Title VII exhaustion requirement, "though mandatory, is not jurisdictional," and therefore any alleged failure to exhaust should be analyzed under Rule 12(b)(6). *Douglas v. Donovan*, 559 F. 3d 549, 556 n.4 (D.C. Cir. 2009). In contrast, the Rehabilitation Act exhaustion requirement is jurisdictional in some cases—when a plaintiff altogether fails to file an EEOC charge raising to his claims, as required under statute, the Court must dismiss for lack of subject matter jurisdiction. *See Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006). In contrast, when a plaintiff files a charge but merely fails to meet administrative deadlines, the Court is not deprived of jurisdiction. *Doak*, 798 F.3d at 1104–05; *see Williams v. Brennan*, 320 F. Supp. 3d at 127–128 (D.D.C. 2018) (distinguishing between statutory and administrative deadlines).

The DHS defendants move to dismiss all claims based on allegations predating October 6, 2017—45-days before the plaintiff first contacted EEOC—for failure to exhaust and failure to

8

meet administrative deadlines.  These allegations include Lambert's allegedly discriminatory acts between 2008 and 2015, which include the statement "Can you tell your people to stop blowing up my country?"; her general "derogatory comments" about "military types" and individuals of plaintiff's race, national origin, religion, gender, and disability status; and her denying the plaintiff an office space.[2]  Compl. ¶¶ 27–31.  They also include the September 2016 interview with EOIR, in which Lambert allegedly made false and derogatory statements about the plaintiff, questioned his "loyalty to the United States based on his ethnicity and national origin, and her assumption that he was Muslim," and "wrongfully disclosed [his] medical information and his physical and mental disabilities."  *Id.* ¶ 34; *see* DHS EEOC Exhibits at 3 (noting Lambert's interview with EOIR occurred on September 12, 2016).  The plaintiff asserts that those comments were motivated by discriminatory animus and were in retaliation for Ayo-Aghimien's 2015 email complaint to the Office of Legal Counsel.  Compl. ¶ 38.  He further asserts that he only "became aware" of Lambert's interview comments in November 2017, and he initiated contact with EEOC that same month.  DHS EEOC Exhibits at 1–2.  The Court will analyze each claim separately to determine whether the plaintiff timely exhausted his claims against DHS.

          i.    Title VII Discrimination and Retaliation Claims

Ayo-Aghimien's Title VII discrimination claims are materially identical to those he raised to the EEOC on November 21, 2017, after having received notice earlier that month of Lambert's September 2016 remarks.  *See* DHS EEOC Exhibits at 2 (alleging Lambert "provided inaccurate and derogatory information about him in connection with [his] temporary appointment as an Immigration Judge" because of his protected statuses).  Thus, for purposes of his discrimination

---

[2] The defendants move to dismiss any claim based on Lambert's allegedly materially adverse action of denying the plaintiff an office space.  Because Ayo-Aghimien never filed any EEOC charge based on that action, he may not proceed on any claim based on this alleged adverse action.

claims, Ayo-Aghimien has at least plausibly alleged that he complied with exhaustion requirements and initiated EEOC proceedings in November 2017, within 45 days of acquiring "reasonable suspicion" of Lambert's September 2016 remarks. *See Adesalu*, 606 F. Supp. 2d at 102. Accordingly, the Court will proceed to the merits of the plaintiff's Title VII discrimination claims on Counts I, II, III, IV, and V.

                ii.       Rehabilitation Act Claims

Like his Title VII discrimination claims, Ayo-Aghimien's Rehabilitation Act claims are materially identical to those raised in his EEOC charge. *See* DHS EEOC Exhibits at 2. Under the Rehabilitation Act, however, the Court must first consider a claim is jurisdictionally barred. Exhaustion under the Rehabilitation Act may pose a jurisdictional bar when a plaintiff does not file an EEOC charge. In this case, Ayo-Aghimien filed a charge, and DHS issued a Final Action on the charge. *See* DHS EEOC Exhibits at 2–6. Accordingly, any failure to meet the administrative deadlines, such as those set forth in 29 C.F.R. § 1614.105(a)(1), does not impose a jurisdictional bar, and the Court must instead engage in an equitable inquiry to determine whether this action may proceed. *See Doak*, 798 F.3d at 1104–05; *see Williams*, 320 F. Supp. 3d at 127–128.

DHS's Final Agency Action—finding that Lambert's "disparaging remarks" and sharing of the plaintiff's medical information were not actionable—did not mention timeliness or challenge the plaintiff's compliance with 29 C.F.R. § 1614.105(a)(1). *See* DHS EEOC Exhibits at 2–6. Thus, even assuming that Ayo-Aghimien's EEOC charge was untimely under the regulation, the agency waived any objection based on administrative deadlines. *See Doak*, 798 F.3d at 1105 (when an agency adjudicates an EEOC charge "on the merits . . . without mentioning

timelines," the agency waives a timeliness objection). Accordingly, the Court will also proceed to the merits of the disability claim on Count VI.

>             iii.     Title VII Hostile Work Environment Claim

Next, the Court turns Count VII, Ayo-Aghimien's Title VII hostile work environment claim. The exhaustion requirement for a hostile work environment claim "is less stringent than for stand-alone claims of discrimination and retaliation." *Leach v. Nat'l R.R. Passenger Corp.*, 128 F. Supp. 3d 146, 153 (D.D.C. 2015) (internal quotation marks omitted). A plaintiff need not "invoke[] a hostile work environment claim by name" or "use specific 'magic words' in order to exhaust it." *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 33 (D.D.C. 2019) (citation omitted). But a plaintiff's EEOC charge must allege some "ongoing pattern of conduct" or "describe[e] a workplace pervaded by abuse." *Congress v. District of Columbia*, 324 F. Supp. 3d 164, 171 (D.D.C. 2017). "[T]he central question is whether the employee's complaint contained 'sufficient information' to put the agency on notice of the claim." *See Crawford v. Duke*, 867 F.3d 103, 109 (D.C. Cir. 2017) (citation omitted).

Ayo-Aghimien has not met even the more lenient standard for exhaustion of his hostile work environment claim. Although he sent an email complaining of a hostile work environment to the Office of Chief Counsel in November 2015, he did not timely file any formal EEOC charge alleging that claim. *Id.* ¶ 31. Instead, in his 2018 EEOC charge, Ayo-Aghimien emphasized that the focus of his grievance was that "the unreliable and prohibited information provided by Ms. Lambert [to EOIR] violate[d] federal protections from discrimination." EEOC Charge at 2, Dkt. 29-2. He made no claim of hostile work environment, despite alleging nine other bases for discrimination, including "race (African), color (Black), religion (Islam), sex (Male), national origin (Nigerian), age (47), disability (Disabled Veteran), Veteran Status (Medically Retired), and

11

reprisal (Based on prior . . . complaint)." *See id.* Consistent with the plaintiff's framing, DHS made no hostile work environment finding in its Final Agency Action—rather, it investigated Lambert's EOIR interview and the nine specific discriminatory grounds raised by the plaintiff in objection to that interview. *See Jimenez*, 395 F. Supp. 3d at 33 (finding no exhaustion where "[the agency's] final agency decision . . . addresse[d] in full [the plaintiff's] allegations of discrete acts of discrimination but in no way reference[d] ongoing harassment or a hostile work environment" (emphasis omitted)). Taken as a whole, Ayo-Aghimien's charge did not "put the agency on notice" that he was raising a hostile work environment claim, *Duke*, 867 F.3d at 109, nor could the charge "reasonably be expected upon investigation to lead to a hostile work environment claim," *Park*, 71 F.3d at 909. Thus, the Court will dismiss Count VII with prejudice.

    2.    *Failure to State a Claim*

        i.    Title VII Discrimination Claims

The Court next turns to the merits of the remaining exhausted claims. To state a discrimination claim under Title VII or the Rehabilitation Act, a plaintiff must plausibly allege that (1) his employer took an adverse employment action (2) on account of his protected status. *Brett v. Brennan*, 299 F. Supp. 3d 63, 72 (D.D.C. 2018); *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007). The D.C. Circuit recently clarified that an employer's action need only "affect[] an employee's terms, conditions, or privileges of employment" to constitute an adverse action sufficient to support a discrimination claim. *Chambers v. District of Columbia*, 35 F.4th 870, 877 (D.C. Cir. 2022) (en banc) (quotations omitted). Post-employment actions can amount to a materially adverse action, *see Robinson v. Shell Oil Co.*, 519 U.S. 337, 339 (1997), including "efforts by an employer to scuttle a former employee's search for a new job, such as by . . . providing negative information to a prospective employer," *Passer v. Am. Chem. Soc.*, 935 F.2d

12

322, 331 (D.C. Cir. 1991). However, not every malicious employment reference "will engender a grievance cognizable under Title VII"—a plaintiff must still allege that the negative reference was motivated by animus toward the plaintiff's protected status. *See Shehadeh v. Chesapeake & Potomac Tel. Co. of Maryland*, 595 F.2d 711, 723 (D.C. Cir. 1978).[3]

To establish an "adverse action" in support of his discrimination claims, Ayo-Aghimien relies on the purportedly false and negative statements that Lambert made in her 2016 EOIR interview,[4] which allegedly resulted in the withdrawal of his appointment as an Immigration Judge. He alleges those negative statements were motivated by Lambert's animus against his protected statuses—his race, national origin, perceived religion, and gender. But Ayo-Aghimien's allegations about Lambert's discriminatory animus are conclusory and factually unsupported.

---

[3] In this district, claims asserting that a negative employment reference constituted a materially adverse action are typically alleged as *retaliation* claims. *E.g.*, *Tarquinii v. Del Toro*, No. 21-cv-1567 (RC), 2024 WL 4298857, at *15–16 (D.D.C. Sept. 26, 2024); *Barry v. Haaland*, No. 19-cv-3380 (DLF), 2022 WL 4598518, at *7 (D.D.C. Sept. 29, 2022). And the D.C. Circuit has explained that Title VII's *discrimination* provisions generally "do[] not apply to adverse employment references unless there are also other allegedly cognizable discriminatory acts that fall within Title VI." *Shehadeh,* 595 F.2d at 720 n.44. But in *Shehadeh*, the Circuit concluded that "no authority indicat[es] that discriminatory issuance of negative references could never transgress [Title VII's discrimination provisions]," *id.*, and accordingly, it permitted a plaintiff's discrimination claims based on negative references to survive a motion to dismiss, *id.* at 729. Because this Court is not aware of any superseding authority, it will likewise analyze Ayo-Aghimien's claims based on Lambert's negative references as discrimination claims.

[4] Ayo-Aghimien also alleges that Lambert "falsely criticized" him in his annual performance reviews while he was employed at DHS. Compl. ¶ 30. But "interlocutory or mediate decisions," *Moore v. Ashcroft*, 401 F. Supp. 2d 1, 26 (D.D.C. 2005) (citation omitted), such as disciplinary referrals or negative inputs to an employee's review, are not materially adverse employment actions when they do not affect the plaintiff's "terms, conditions, or privileges of employment or future employment opportunities," *McCallum v. Mayorkas*, No. 21-cv-1911 (ABJ), 2023 WL 3203011, at *13 (D.D.C. May 2, 2023) (quotations omitted). Ayo-Aghimien does not allege any tangible adverse consequence or seek any relief related to his employment conditions at DHS—for example, he does not allege that he was deprived of any professional opportunity, promotion, or pay increase while he was supervised by Lambert. *See generally* Compl. He does allege, however, that Lambert denied him office space, but as explained, *supra* n.2, he cannot proceed on this theory because he did not present it to the EEOC.

13

In the absence of direct evidence of discrimination—for example, "a statement that itself shows racial or gender bias in the decision," *Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011)—a discrimination claim is analyzed under the *McDonnell Douglas* framework, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see, e.g.*, *Townsend v. United States*, 236 F. Supp. 3d 280, 297–98 (D.D.C. 2017).  A plaintiff must plead facts from which the Court can plausibly infer "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (citations omitted).  At the motion-to-dismiss stage, a plaintiff need not plead facts supporting every element of a *prima facie* case or anticipate the non-discriminatory reasons that may be proffered by his employer for its actions.  *See id.* at 511. But taken collectively, "the inferences of discrimination drawn by the plaintiff" must be "reasonable and plausibly supported." *Townsend*, 236 F. Supp. 3d at 298 (citing *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016)).

As to the race, national origin, and religion discrimination claims, aside from highlighting a single comment Lambert allegedly made around 2014—about "your people . . . blowing up my country," Compl. ¶ 30—the plaintiff fails to provide any specifics about Lambert's discriminatory statements or conduct.  The complaint relies on vague and generalized references to, for example, "derogatory remarks in the Plaintiff's presence regarding persons of Plaintiff's race (black)"; "negative comments about the Plaintiff"; negative comments "regarding Plaintiff's travel outside the United States"; and "other such remarks." *Id.* ¶¶ 28–30, 34.  Although Ayo-Aghimien further alleges that Lambert "consistently afforded more favorable treatment to the Plaintiff's colleagues who were similarly situated and who were not black and not born in Africa," he does not identify any suitable comparators or mention any specific incidents. *Id.* ¶ 37.  Finally, the gender

discrimination claim is even more lacking in factual support. Indeed, the complaint is entirely devoid of any reference to any discriminatory fact or statement directed toward Ayo-Aghimien's male gender, by Lambert or any other individual.

Because the complaint fails to raise the reasonable inference that Lambert discriminated against the plaintiff because of his race, national origin, perceived religion, or gender, the Court will dismiss Counts I, II, III, and IV without prejudice for failure to state a claim.

ii.   Rehabilitation Act Discrimination Claim

Ayo-Aghimien also fails to plead with sufficient specificity his disability discrimination claim under the Rehabilitation Act. To state such a claim, plaintiffs must plausibly allege that "(1) they are disabled within the meaning of the Rehabilitation Act, (2) they are otherwise qualified, (3) they were excluded from, denied the benefit of, or subject to discrimination under any program or activity solely by reason of their disability, and (4) the program or activity is carried out by a federal executive agency or with federal funds." *Mathis v. U.S. Parole Comm'n*, --F. Supp 3d.--, 2024 WL 4056568, at *4 (D.D.C. Sept. 5, 2024) (quotations omitted). Here, Ayo-Aghimien's factual allegations fall short on the third prong. The complaint contains two allegations to support his claim that Lambert was motivated "solely by reason" of his PTSD or other disability, *id.*, but neither raises a plausible inference of discriminatory intent.

First, around 2012, Lambert allegedly made derogatory remarks about Ayo-Aghimien's deployment absences and about "military types" being "dump[ed]" on her. Compl. ¶ 27. But military status is not a protected category under the Rehabilitation Act, and by the plaintiff's own telling, those 2012 remarks are reasonably interpreted as Lambert's frustration about the plaintiff's deployment—specifically, his "le[aving] the office with more workload"—rather than his disability. *Id.* Second, Ayo-Aghimien asserts that he "is informed and believes" that Lambert

15

"wrongfully disclosed Plaintiff's medical information and his physical and mental disabilities." *See id.* ¶ 34. But he fails to provide any detail about this alleged disclosure. For example, Ayo-Aghimien does not assert the source of his information, specify the nature of his disability, provide any specifics about what Lambert disclosed, or explain why the disclosure can be plausibly interpreted as evidence of Lambert's discriminatory animus. *Id.*[5]

In sum, the facts as currently alleged in the complaint are too conclusory and threadbare to state a plausible claim for disability discrimination. Accordingly, the Court will dismiss Count VI without prejudice.

### iii. Title VII Retaliation Claim

Ayo-Aghimien's retaliation claim, Count V, alleges that Lambert's negative reference during her EOIR interview was in retaliation for his 2015 complaint to the ICE Office of Chief Counsel. An employee claiming retaliation must plausibly establish "(1) that [the] employee engaged in statutorily protected activity; (2) that the employee suffered a materially adverse action by the employee's employer; and (3) that a causal link connects the two." *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Library of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013); *Pueschel v. Chao*, 955 F.3d 163, 167 (D.C. Cir. 2020). "[I]n the absence of direct evidence of retaliation such claims are generally limited to conduct occurring shortly after the employee's protected activity." *Pueschel*, 955 F.3d at 167.

Ayo-Aghimien's retaliation claim fails on the third element. Although he conclusorily asserts that Lambert's negative comments in September 2016 were motivated by the email complaint he sent in November 2015, he presents no other facts to support an inference of

---

[5] Notably, the EEOC's investigation into the disability discrimination charge, which includes a detailed review of the notes by the EOIR interviewer, does not mention that Lambert disclosed any medical information about the plaintiff. *See* DHS EEOC Exhibits at 2–6.

16

causation. To establish a causal nexus "in the absence of direct evidence," a plaintiff must show that "the adverse personnel action took place shortly after [the protected] activity." *Keys v. Donovan*, 37 F. Supp. 3d 368, 372 (D.D.C. 2014) (quotations omitted). The cases that accept mere temporal proximity—between the protected activity and the adverse employment action—as sufficient evidence of causality uniformly hold that the temporal proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (collecting cases). Although this Circuit has never adopted a bright-line rule, courts generally find that a gap greater than three months "negates the temporal proximity needed to prove causation." *Keys*, 37 F. Supp. 3d at 373 (citing *Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009)). Here, nearly 10 months elapsed between Ayo-Aghimien's email complaint and Lambert's allegedly retaliatory comments, and Ayo-Aghimien presents no other evidence of causation. Because the plaintiff has failed to allege the necessary causal link between the alleged act of retaliation and his protected activity, the Court will grant the defendants' motion and dismiss Count V with prejudice.

## CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss, Dkt. 22, is **GRANTED**. The plaintiff's claims against the Attorney General are dismissed with prejudice for failure to timely file this federal action. Further, Counts I, II, III, IV, and VI against the Secretary of Homeland Security are dismissed without prejudice for failure to state a claim; Count V is dismissed with prejudice for failure to state a claim; and Count VII is dismissed with prejudice for failure to exhaust. Should the plaintiff seek leave to file an amended complaint, he shall file a motion including a redline copy of the proposed amended complaint on or before February 19, 2025. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

February 5, 2025