**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ARTHUR AYO-AGHIMIEN II,

   *Plaintiff*,

  v.

KRISTI NOEM, Secretary of Homeland
Security,

   *Defendant*.

No. 24-cv-01341 (DLF)

---

**<u>MEMORANDUM OPINION</u>**

  Arthur Ayo-Aghimien brings this action against the Secretary of Homeland Security under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*  *See generally* Am. Compl., Dkt. 38.  He alleges that the defendant discriminated against him and caused the withdrawal of his appointment as an Immigration Judge on the basis of his race, national origin, religion, gender, and disability status.  Before the Court is the defendant's Motion to Dismiss the Amended Complaint.  Dkt. 39.  For the reasons that follow, the Court will grant the motion.

**I. BACKGROUND**

  Ayo-Aghimien is a licensed attorney and a black, Christian male born in Nigeria.  Am. Compl. ¶¶ 9, 24.  From April 2001 to September 2016, he served with the U.S. Air Force Judge Advocate General Corps.  *Id.* ¶ 24.  He suffers from post-traumatic stress disorder (PTSD) related to his military service.  *Id.* ¶¶ 10, 63.

  While serving as a reservist in November 2007, Ayo-Aghimien began employment as an attorney with Immigration and Customs Enforcement (ICE), an agency of the Department of

Homeland Security (DHS).  *Id.* ¶¶ 26–27.  He deployed to Iraq in May 2008 and, upon his return, was transferred to ICE's Office of Field Counsel in Las Vegas, Nevada.  *Id.* ¶ 27.  His immediate supervisor in the Las Vegas office was Deputy Field Counsel Mary-Jean Lambert.  *Id.* ¶ 28.  Ayo-Aghimien alleges that Lambert conveyed to him "negative comments from other ICE officials" regarding his 2008 deployment.  *Id.*  In November 2009, Ayo-Aghimien was again deployed outside of the United States in support of military operations, during which he suffered injuries requiring extensive treatment and rehabilitation.  *Id.* ¶ 29.

When Ayo-Aghimien returned to ICE in September 2012, Lambert allegedly again made "derogatory comments" regarding his deployment.  *Id.* ¶ 30.  Specifically, she asserted that he had "left the office with more workload," which had "pissed off her attorneys"; that she "did not care to hire 'military types'"; and that the Los Angeles Deputy Chief Counsel "had apologized for 'dumping'" him on the Las Vegas office.  *Id.*  She also denied him an office and required him to work in the library, despite unoccupied offices being available, and despite providing large, private, windowed offices to two other attorneys—An Mai Nguyen, a Vietnamese-American woman, and Peter Eitel, a white man born in the United States.  *Id.* ¶¶ 31–34.  When Ayo-Aghimien requested to use one of the unoccupied offices, Lambert accused him of "trying to start trouble."  *Id.* ¶ 41.

Ayo-Aghimien further alleges that Lambert made a series of derogatory comments regarding his race, national origin, and perceived religion.  For example, he asserts that Lambert made "derogatory remarks in [his] presence regarding persons of [his] race (black)."  *Id.* ¶ 42.  In particular, she "made sarcastic comments about then-President Barack Obama," whom she accused of "selling out the country" and not being an American.  *Id.*  Ayo-Aghimien also alleges that Lambert made "discriminatory comments about certain of the private attorneys who

represented clients in immigration proceedings who were non-white and/or foreign born"—
"question[ing] their competence and the quality of their legal educations" and calling one Hispanic
immigration attorney from Peru a "lazy" "crybaby" who was unable to "handle" a legal case. *Id.*
¶ 43 (citation modified).    Finally, Ayo-Aghimien alleges that Lambert made "derogatory
comments about Muslims in his presence," making it clear that "she thought, because of his
national origin, race, color and accent, that [he] was a follower of Islam." *Id.* ¶ 44.  He identifies
one such comment in particular: "Can you tell your people to stop blowing up my country?" *Id.*

Ayo-Aghimien also alleges that Lambert treated other attorneys more favorably than him.
For example, Lambert would frequently visit Nguyen and Eitel "personally in their respective
private offices and have lengthy conversations with them," *id.* ¶ 35, and "often talked privately"
with Christian Parke, a "white male attorney who was similarly situated to [Ayo-Aghimien] in all
relevant respects, except that he was U.S. born, not black and not disabled," *id.* ¶ 40.  In contrast,
Ayo-Aghimien asserts that Lambert "seldom went to [his] work area to discuss work-related
matters," instead sending other individuals on her behalf. *Id.* ¶ 35.  He further alleges that Lambert
discriminated against him regarding certain privileges of employment. *Id.* ¶ 36.  In addition to
denying Ayo-Aghimien a personal office space, Lambert initially assigned an indoor parking space
to Eitel, relenting and assigning it to Ayo-Aghimien only when he questioned why he was
receiving disparate treatment. *Id.* ¶¶ 36–37.  Lambert also assigned Eitel, rather than Ayo-
Aghimien, to "preferable" assignments. *Id.* ¶ 38. Ayo-Aghimien also alleges that Lambert "made
negative comments about [him] and the quality of his work" and "falsely criticized [him] in his
annual performance appraisals," even though he "handled his assigned workload as well as or
better than his white, U.S. born colleagues." *Id.* ¶ 45.

In August 2014, Ayo-Aghimien applied to serve as an Immigration Judge with the Executive Office of Immigration Review (EOIR), an agency of the Department of Justice. *Id.* ¶¶ 47–48. The application process was "lengthy and thorough." *Id.* ¶ 47. In November 2015, while his application was pending, Ayo-Aghimien emailed a complaint to the ICE Office of Chief Counsel accusing Lambert of subjecting him to a hostile work environment. *Id.* ¶ 46. He also started seeking other employment "[b]ecause of" Lambert's "discrimination and retaliation against him." *Id.* In January 2016, he transferred to his current role at the Transportation Security Agency, another agency within DHS. *Id.* ¶ 47.

On August 30, 2016, Ayo-Aghimien received an offer of employment as an Immigration Judge. *Id.* ¶ 48. He alleges that, at all times relevant to this dispute, he met or exceeded the qualifications necessary to serve in that position, *id.* ¶¶ 13, 65, and could perform its essential functions, *id.* ¶¶ 12, 65, 108.

Ayo-Aghimien contends that, after Lambert learned of his offer of employment, she contacted EOIR and made "false, derogatory comments" about him. *Id.* ¶ 58. In an interview with an Immigration Judge, Lambert represented that Ayo-Aghimien was not "reliable, honest, trustworthy and of good character," *id.* ¶ 51; stated that he "ha[d] made many trips outside of the U.S." and that "there was a problem regarding his passport use," *id.*; said that she was "worried about his temperament," *id.* ¶ 52; and represented that there was a "weird situation" when he worked for ICE in Los Angeles and that it "got strange there," *id.* Lambert stated on an EOIR form that the information she had provided could not be released to Ayo-Aghimien. *Id.*

Ayo-Aghimien alleges that EOIR "immediately rescinded" his tentative appointment "[b]ased entirely upon" Lambert's statements, *id.* ¶ 53, without "independently investigating the

derogatory information [Lambert] provided" or allowing Ayo-Aghimien to respond, *id.* ¶ 58. EOIR did not notify Ayo-Aghimien of the reason for the recission. *Id.* ¶ 59.

On July 1, 2017, Ayo-Aghimien filed a formal EEOC charge against the Department of Justice. *Id.* ¶ 21. In the course of the Department's investigation of the complaint, Lambert "signed and submitted a sworn, written statement under penalty of perjury, in which she denied that she ever communicated with EOIR to provide information about [Ayo-Aghimien]." *Id.* ¶ 54.

Ayo-Aghimien filed a formal EEOC charge against DHS on March 5, 2018. *Id.* ¶ 17. The charge alleged that Lambert had "provided inaccurate and derogatory information about him in connection with [his] temporary appointment as an Immigration Judge," in retaliation and based on his race, color, religion, sex, national origin, age, and disability status. DHS Final Agency Decision 2, Dkt. 23-2.[1] On June 6, 2022, DHS's Office of Civil Rights and Civil Liberties issued a final agency decision concluding that DHS had not discriminated against Ayo-Aghimien. Am. Compl. ¶ 19. Ayo-Aghimien appealed, and the EEOC affirmed the decision. *Id.* ¶ 20.

On November 11, 2023, Ayo-Aghimien filed the instant action in the U.S. District Court for the Southern District of Florida against the Attorney General and the Secretary of Homeland Security in their official capacities. *See* Compl., Dkt. 1. His complaint alleged seven counts against the defendants: race discrimination under Title VII, national origin discrimination under Title VII, religious discrimination under Title VII, gender discrimination under Title VII, retaliation under Title VII, disability discrimination under the Rehabilitation Act, and hostile work environment under Title VII. *See generally id.* After the Florida court granted Ayo-Aghimien's unopposed motion to change venue, *see* Pl.'s Unopposed Mot. for Change of Venue, Dkt. 14, and

---

[1] Because Ayo-Aghimien's EEOC charge is referenced in the complaint and is integral to his claims, the Court will consider it in deciding the motion to dismiss. *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

transferred this action to the undersigned, *see* Order Transferring Case, Dkt. 16, the defendants moved to dismiss the claims, *see* Defs.' Mot. to Dismiss, Dkt. 22.

On February 5, 2025, the Court granted the defendants' motion to dismiss. *See generally* Order, Dkt. 32; Mem. Op., Dkt. 33. The Court dismissed each of Ayo-Aghimien's claims against the Attorney General with prejudice for failure to timely file suit. Mem. Op. 17. The Court also dismissed Ayo-Aghimien's retaliation claim against the Secretary of Homeland Security with prejudice for failure to state a claim, and his hostile work environment claim against the Secretary with prejudice for failure to exhaust. *See id.* The Court dismissed Ayo-Aghimien's remaining claims against the Secretary without prejudice for failure to state a claim. *Id.*

Ayo-Aghimien has now filed an amended complaint that asserts five claims against the Secretary of Homeland Security[2]: racial discrimination under Title VII (Count I); national origin discrimination under Title VII (Count II); religious discrimination under Title VII (Count III); gender discrimination under Title VII (Count IV); and disability discrimination under the Rehabilitation Act (Count V).

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While this standard does not amount to a specific probability requirement, it does require

---

[2] The Court will refer to the Secretary of Homeland Security in her official capacity as "DHS."

"more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (citation modified).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation modified). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation modified). And an "unadorned, the-defendant-unlawfully-harmed-me accusation" is not credited. *Id.* Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a Rule 12(b)(6) motion, the Court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

## III.   ANALYSIS

DHS moves to dismiss each of Ayo-Aghimien's counts for failure to state a claim. To state a discrimination claim under Title VII or the Rehabilitation Act, a plaintiff must plausibly allege

that (1) he "suffered an adverse employment action" (2) because of his "race, color, religion, sex, national origin, age, or disability."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). While an employer's action need only "affec[t] an employee's terms, conditions, or privileges of employment" to constitute an adverse action sufficient to support a discrimination claim, *Chambers v. District of Columbia*, 35 F.4th 870, 877 (D.C. Cir. 2022) (en banc) (citation modified), not every malicious employment reference "will engender a grievance cognizable under Title VII"—a plaintiff must still allege that the negative reference was motivated by animus toward the plaintiff's protected status, *Shehadeh v. Chesapeake & Potomac Tel. Co. of Md.*, 595 F.2d 711, 723 (D.C. Cir. 1978).

In the absence of direct evidence of discrimination, a discrimination claim is analyzed under the *McDonnell Douglas* framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see, e.g.*, *Townsend v. United States*, 236 F. Supp. 3d 280, 297–98 (D.D.C. 2017).  Under that framework, the plaintiff has the burden of first establishing a prima facie case of discrimination by showing that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (citation modified).  If "the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the action in question."  *Id.* (citation modified).  "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Id.* (citation modified); *see McDonnell Douglas Corp.*, 411 U.S. at 804–05.

At the motion to dismiss stage, a plaintiff need not plead facts supporting every element of a prima facie case or anticipate the nondiscriminatory reasons that his employer may proffer. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–14 (2002). But, taken collectively, "the inferences of discrimination drawn by the plaintiff" must be "reasonable and plausibly supported." *Townsend*, 236 F. Supp. 3d at 298; *see Joyner v. Morrison*, 140 F.4th 523, 530 (D.C. Cir. 2025) ("[A] plaintiff must plead facts sufficient to allow a plausible inference that the challenged action was taken because of his race.").

For the reasons that follow, the Court will conclude that Ayo-Aghimien has failed to allege facts that support a reasonable inference that Lambert discriminated against him on the basis of his race, national origin, perceived religion, gender, or disability.

### A. Title VII Discrimination Claims

#### 1. *Adverse Action*

Before addressing the specifics of Ayo-Aghimien's individual claims, the Court must clarify the alleged adverse employment action(s) at issue. To establish an "adverse action" in support of his discrimination claims, Ayo-Aghimien relies primarily on the purportedly false and negative statements that Lambert made in her 2016 EOIR interview, which allegedly resulted in the withdrawal of his appointment as an Immigration Judge. *See, e.g.*, Am. Compl. ¶¶ 73, 81, 91, 100, 109. Some of Ayo-Aghimien's Title VII claims, however, could also be read to identify additional adverse employment actions, including Lambert's (1) denial of office space and an interior parking space; (2) greater face-to-face interaction with Nguyen, Eitel, and Parke; (3) allocation of preferable assignments to Eitel; and (4) negative comments in Ayo-Aghimien's annual performance appraisals. *See, e.g.*, *id.* ¶¶ 72, 90, 99. To the extent that Ayo-Aghimien asserts that any of these alleged actions constituted adverse employment actions, he cannot proceed

on that theory.  As the Court previously found, Ayo-Aghimien's formal EEOC charge against DHS "alleged that Lambert had provided inaccurate and derogatory information about him in connection with his temporary appointment as an Immigration Judge, in retaliation and based on his race, color, religion, sex, national origin, age, and disability status."  Mem. Op. 4 (citation modified); *see* DHS Final Agency Decision 2.  Because that charge encompasses only the statements that Lambert made in her 2016 EOIR interview, Ayo-Aghimien cannot proceed on any claim based on the other allegedly adverse actions.  *See Mount v. Johnson*, 36 F. Supp. 3d 74, 83–84 (D.D.C. 2014) ("[A]s a general rule, a Title VII plaintiff must timely exhaust administrative remedies for *each discrete act alleged*, even if the acts are related." (citation modified)); Mem. Op. 9 n.2.

### 2.  *Failure to State a Claim*

Ayo-Aghimien has failed to state a claim of discrimination on the basis of race, national origin, religion, or gender.  None of the comments that Lambert made in the 2016 EOIR interview suggests discrimination, prejudice, or animus on the basis of any of these protected characteristics. *See* Am. Compl. ¶¶ 51–52 (Lambert represented that Ayo-Aghimien was not "reliable, honest, trustworthy and of good character"; stated that he "ha[d] made many trips outside of the U.S." and that "there was a problem regarding his passport use"; said that she was "worried about his temperament"; and represented that there was a "weird situation" when he worked for ICE in Los Angeles and that it "got strange there").  Nor do the handful of allegedly discriminatory comments that Lambert made between approximately 2012 and 2016 give rise to an inference of discrimination.  Lambert's alleged comments regarding a Hispanic immigration attorney from Peru, *see id.* ¶ 43, were neither discriminatory on their face nor directed at Ayo-Aghimien.  And while Lambert's alleged statement "tell your people to stop blowing up my country," *id.* ¶ 44, and

10

suggestion that then-President Barack Obama was not an American, *id.* ¶ 42, could be interpreted as discriminatory on the basis of religion and national origin, respectively, Ayo-Aghimien has not connected either isolated comment to Lambert's 2016 EOIR interview, *see Ajisefinni v. KPMG LLP*, 17 F. Supp. 3d 28, 44 (D.D.C. 2014) ("A single remark albeit insensitive, is insubstantial to establish direct evidence of racial or national origin discrimination on the part of the defendant.  In order for Plaintiff to establish discriminatory animus in an adverse employment decision . . . there must be a clear nexus between the stray workplace remark and the adverse action." (citation modified)); *Bilal v. Metro. Police Dep't*, No. 25-cv-189, 2025 WL 1917959, at *4 (D.D.C. July 11, 2025) (alleged "racially charged comments," though "concerning," did not give rise to inference of discrimination where plaintiff failed to link the statements to the adverse employment actions).  These two "isolated . . . remark[s] unrelated to the relevant employment decision" do not, without more, give rise to an inference of discrimination.  *Morris v. McCarthy*, 825 F.3d 658, 669 (D.C. Cir. 2016).  *Contrast, e.g.*, *Belov v. World Wildlife Fund, Inc.*, No. 21-cv-1529, 2021 WL 4773236, at *4 (D.D.C. Oct. 13, 2021) ("pattern of comments show[ed] evidence of a discriminatory attitude against women, pregnant women, and lactating women, as well as a targeting of [the plaintiff] on the basis of her sex and pregnancy").

Ayo-Aghimien's alleged comparators cannot salvage these pleading deficiencies.  A Title VII plaintiff "can raise an inference of discrimination by showing that [he] was treated differently from similarly situated employees who are not part of the protected class." *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (citation modified).  To survive a motion to dismiss on a comparator theory, a plaintiff must allege facts showing that "a comparator was similarly positioned to the plaintiff in at least some relevant respects" such that the comparator "provide[s] a benchmark" against which the court may "plausibly infer that discrimination caused the

11

defendant's differential treatment of the plaintiff." *Joyner*, 140 F.4th at 531.  While "[t]he traits a [plaintiff] must plead about comparators to provide a benchmark against which the court can make such a determination will vary widely from case to case," *id.*, the plaintiff must at least plead sufficient facts for the court to "infer more than the mere possibility of misconduct," *id.* at 532 (citation modified).

Here, Ayo-Aghimien's allegations as to his proposed comparators—Nguyen, Eitel, and Parke—do not give rise to a plausible inference of discrimination.  To start, while Ayo-Aghimien alleges that Lambert did not "attempt to interfere with" Nguyen's application to serve as an Immigration Judge, Am. Compl. ¶ 68, he has not alleged that either Eitel or Parke was similarly situated with respect to a pending job application.  The Court is skeptical that Ayo-Aghimien can demonstrate that either Eitel or Parke was treated "more favorably in the same factual circumstances" absent any allegation that they were similarly situated in this key respect.  *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (citation modified); *see, e.g.*, *Harris v. Buttigieg*, No. 23-cv-2752, 2025 WL 343131, at *5 (D.D.C. Jan. 30, 2025) (plaintiff "fail[ed] to identify any similarly situated comparator" who "received a promotion or superior performance review when he did not" or "received a superior annual performance review in October 2022, when his was downgraded"); *Stanford v. Howard Univ.*, No. 23-cv-3041, 2025 WL 3062907, at *3 (D.D.C. Nov. 3, 2025) ("Mr. Stanford does not point to any other 'similarly situated' applicant—*i.e.*, someone who also submitted an incomplete application—who was given more consideration or selected for an interview.").

Furthermore, even if a single comparator or allegations of more favorable treatment in contexts unrelated to the adverse employment action were sufficient, Ayo-Aghimien fails to allege sufficient detail to permit an inference of discrimination.  While he asserts the broad proposition

12

that Nguyen, Eitel, and Parke were similarly situated in "relevant respects," *see, e.g.*, Am. Compl. ¶¶ 32, 40, "a plaintiff's assertion that that [he] is similarly situated to others is just a legal conclusion[,] and a legal conclusion is never enough to state a claim," *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 103 (D.D.C. 2021) (citation modified).  Ayo-Aghimien does not, for example, allege any details regarding their job titles, responsibilities, or performance.  *See Burley*, 801 F.3d at 301 ("Factors that bear on whether someone is an appropriate comparator include the similarity of the plaintiff's and the putative comparator's jobs and job duties."); *Joyner*, 140 F.4th at 532 (plaintiff did not allege sufficient facts to show that he was similarly situated to comparators where "the complaint include[d] no information about the [alleged comparators'] experience or qualifications relative to" the plaintiff's); *Yuvienco v. Vilsack*, No. 23-cv-186, 2024 WL 727712, at *4 (D.D.C. Feb. 22, 2024) (plaintiff failed to plead claim by comparison to co-worker where she did not allege any details about "the co-worker's job title, how th[e] co-worker's responsibilities compared to hers, and whether she and the co-worker reported to the same supervisors," or regarding "how the co-worker's performance was poor, or how it compared to her own performance"); *Doe #1*, 554 F. Supp. 3d at 103 (plaintiff's allegation that alleged comparator was a "counterpart" was "fatally nonspecific").  Ayo-Aghimien's assertion that his alleged comparators were "attorneys," "co-workers," and "colleague[s]" who presumably also reported to Lambert, Am. Compl. ¶¶ 33, 37, 40, 67, does not establish a "benchmark" against which the Court may "plausibly infer . . . discrimination." *Joyner*, 140 F.4th at 531.  *Contrast, e.g.*, *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115–16 (D.C. Cir. 2016) (proposed comparator nurses

working in similar units with same seniority were similarly situated in terms of roles and responsibilities).[3]

Finally, the Court rejects Ayo-Aghimien's passing argument that Lambert's denial "that she ever communicated with EOIR to provide information about [him]" is of "'considerable evidentiary significance'" and provides "'credible evidence of consciousness of guilt.'" Opp'n 2 (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1292–93 (D.C. Cir. 1998)); *see* Am. Compl. ¶¶ 54–55. Even accepting that Lambert made a false representation that reflects consciousness of guilt, Ayo-Aghimien has offered nothing but conclusory allegations to establish that any such guilt was connected to intentional discrimination. *Cf. Allen v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015) ("Successfully attacking an employer's proffered reason alone will not always suffice to permit an inference of discrimination." (citation modified)). *Contrast, e.g.*, *Stoe v. Barr*, 960 F.3d 627, 646 (D.C. Cir. 2020) ("A reasonable jury could view Tillery's shifting explanations of the selection decision as evidence of pretext to cover up his gender bias."); *Allen*, 795 F.3d at 40 ("[I]t is often reasonable to think that an employer who lies or obviously bluffs about or shifts *its rationale for challenged action* is culpable of the charged discrimination or retaliation." (emphasis added)); *Aka*, 156 F.3d at 1293 ("If the jury can infer that the employer's *explanation* [*for its acts*] is not only a mistaken one in terms of the facts, but a lie, that should provide even stronger evidence of discrimination." (emphasis added)).

---

[3] In his opposition to the motion to dismiss, Ayo-Aghimien further alleges that his proposed comparators also "competed for the preferred assignments to Homeland Security Investigations." Opp'n to Mot. to Dismiss (Opp'n) 16, Dkt. 41. In his amended complaint, however, Ayo-Aghimien alleged only that Eitel was "regularly assigned" to assist in such investigations. Am. Compl. ¶ 38. In any event, absent any allegations regarding Nguyen, Eitel, and Parke's experience, qualifications, job titles, or responsibilities, this further allegation is insufficient to establish that Nguyen, Eitel, or Parke is an appropriate comparator. *Cf. Joyner*, 140 F.4th at 532 (plaintiff failed to allege facts regarding comparators' "experience or qualifications" relative to his own).

Because the complaint fails to raise a reasonable inference that Lambert discriminated against Ayo-Aghimien because of his race, national origin, perceived religion, or gender, the Court will dismiss Counts I, II, III, and IV with prejudice for failure to state a claim.

### B.      Rehabilitation Act Claim

Ayo-Aghimien also fails to plead with sufficient specificity his disability discrimination claim under the Rehabilitation Act.  To state such a claim, a plaintiff must plausibly allege that (1) he is "disabled within the meaning of the Rehabilitation Act"; (2) he is "otherwise qualified"; (3) he was "excluded from, denied the benefit of, or subject to discrimination under a program or activity"; and (4) "the program or activity is carried out by a federal executive agency or with federal funds." *Muir v. DHS*, 145 F.4th 1359, 1371 (D.C. Cir. 2025) (citation modified).

Ayo-Aghimien's factual allegations again fall short on the third prong of this standard.  He alleges that Lambert made "cryptic" remarks to EOIR, Opp'n 12, such as representing that Ayo-Aghimien had a history of "questionable" foreign travel, Am. Compl. ¶ 51, that she "worried" about Ayo-Aghimien's "temperament," *id.* ¶ 52, and that there was a "weird situation" with Ayo-Aghimien when he worked with ICE in Los Angeles and that "it got strange there," *id.*  None of these statements gives rise to a plausible inference of discrimination based on PTSD or any other disability, and Ayo-Aghimien's conclusory allegations of discrimination, *see, e.g.*, *id.* ¶ 57 ("Describing worries about his 'temperament' and using the terms 'weird' and 'strange' likewise were calculated to imply ongoing mental health issues."), do not carry his claims over "the line between possibility and plausibility," *Iqbal*, 556 U.S. at 678 (citation modified).  Furthermore, for the reasons already stated, Ayo-Aghimien's alleged comparator allegations cannot compensate for this pleading deficiency.

Accordingly, the Court will also dismiss Count V with prejudice for failure to state a claim.

15

## CONCLUSION

For the foregoing reasons, the defendant's Motion to Dismiss, Dkt. 39, is **GRANTED**. Counts I, II, III, IV, and V against the Secretary of Homeland Security are dismissed with prejudice for failure to state a claim. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

March 12, 2026

16